## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRANCISCO DEL POZO,**<br>**11208 West 77th Street**<br>**Shawnee, Kansas 66214,** | |
| **Plaintiff,** | |
| | **Civil Action No.** |
| **v.** | |
| **SONNY PERDUE,**<br>**SECRETARY**<br>**U.S. DEPARTMENT OF AGRICULTURE,**<br>**1400 Independence Avenue, S.W.**<br>**Washington, D.C. 20250,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |
| **SERVE:**<br>**Sonny Perdue**<br>**Secretary**<br>**1400 Independence Avenue, S.W.**<br>**Washington, D.C. 20250.** | |

### CIVIL COMPLAINT

**NOW COMES** Plaintiff, Francisco Del Pozo, by and through his undersigned counsel, and, pursuant to Fed. R. Civ. P. 8, 10 and 15, files this Complaint for damages.  Plaintiff states herein as follows:

### JURISDICTION AND VENUE

1.     This action is authorized and instituted pursuant to the Rehabilitation Act of 1973 ("Rehabilitation Act," or "VRA"), 29 U.S.C. § 794, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3.  As this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims.

1

2.     The claims described in this Complaint occurred within this judicial district and venue properly lies in this judicial district and Defendant is a government employer who is subject to the jurisdiction of this Court.

## PARTIES

3.     Plaintiff, Francisco Arturo del Pozo, June 21 of 1971 , is a naturalized citizen of the United States of America.  He resides in the State of Kansas.

4.     Plaintiff is an employee protected by the Rehabilitation Act, the ADEA and Title VII.

5.     Defendant Sonny Perdue, Secretary of the United States Department of Agriculture ("Department" or "USDA") and is the designated representative of the Department of Agriculture.

## ADMINISTRATIVE PROCEDURES

6.     After initiating an informal administrative complaint on March 9, 2017, Plaintiff timely filed an initial formal administrative Complaint of Discrimination against Defendant with the Department's Employment Complaints Division on May 18, 2017.  That administrative Complaint of Discrimination was assigned Complaint No. RMA-2017-00417.  It was amended on June 20, 2017.   Plaintiff timely requested a hearing before an Administrative Judge with the Equal Employment Opportunity Commission ("EEOC"). To date, the EEOC has not scheduled a hearing on that appeal concerning Case No. RMA-2018-00417.

7.     Plaintiff initiated informal contact with an EEO representative in October 2017, and timely filed a second formal administrative Complaint of Discrimination on February 20, 2018 concerning his discriminatory and retaliatory removal from federal service.   That second administrative Complaint of Discrimination was assigned Complaint No. RMA-2018-00117. Plaintiff's administrative complaints of discrimination alleged that he was discriminated against on the basis of his age, race, national origin, color, disability and, in retaliation because of prior

protected activity.  To date, Defendant has not issued a final agency decision in Case No. RMA-2018-00117.

8.      To date, neither the EEOC nor Defendant have issued a final decision on Plaintiff's appeal in Case No. RMA-2017-00417.  To date, Defendant has not issued a final agency decision in Case No. RMA-2018-00117.

9.      More than one hundred eighty (180) days have elapsed from the filing of the initial charges in Case Nos. RMA-2017-00417 and RMA-2018-00117.  This Court, pursuant to § 717(c) of Title VII, 42 U.S.C. § 2000e-16(c), has jurisdiction over the claims asserted in this Complaint.

10.     On September 27, 2017, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB"), Appeal No. CH-0752-17-0587-I-1.  On February 5, 2018, Plaintiff withdraw his MSPB appeal.  The MSPB, on February 7, 2018, dismissed Plaintiff's appeal.

11.     All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation of his administrative complaints of discrimination and they reasonably followed from the allegations contained in the administrative complaints of discrimination and retaliation.

12.     Pursuant to 42 U.S.C. § 2000e-16(c), Plaintiff therefore invokes his right to bring this civil action in that he has satisfied all administrative and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL COUNTS

13.     Plaintiff is a naturalized U.S. Citizen, born in Peru, with a brown skin hue.  At all times relevant to this Complaint, he has been a citizen of the United States.

14.     Plaintiff is fluent in English, although he speaks with a heavy Spanish accent.  He has no difficulties reading, speaking or comprehending spoken English.

15.     At all times relevant to this Complaint, Plaintiff has suffered from autism and depression. Those conditions are physical or mental impairments that affect multiple of Plaintiff's major life activities, including sleeping, speaking, driving motor vehicles, breathing, concentrating, thinking, communicating and working.  When subjected to stressors, Plaintiff's mental impairments cause a significant diminution in Plaintiff's abilities to think, concentrate and focus.

16.     At all times relevant to this Complaint, Plaintiff was able to perform the essential functions of his job, with or without reasonable accommodation and has had disabilities protected by the VRA.

17.     Plaintiff is a trained and experienced economist.

18.     He began his employment with USDA in December 2009, and from that time, until April 2016, worked as an economist in the USDA's Foreign Agriculture Service ("FAS"), in Washington, D.C.

19.     During his tenure at FAS, Plaintiff sought and obtained reasonable accommodations for his disabilities, including telework accommodations and adjustments to his working schedule to better enable him to use public transportation.  Because of his disabilities, including autism, Plaintiff becomes confused and disoriented while driving.

20.     In Spring 2016, Plaintiff sought a transfer to the USDA's Risk Management Agency's ("RMA") location in Kansas City, Missouri.

21.     In April 2016, Plaintiff was transferred to the RMA Kansas City location as an economist in RMA's Product Administration and Standards Division, Policy Administration Branch ("PAD").  His positon was Risk Management Specialist, GS-1101-13.  When he began his employment in PAD, Plaintiff was not provided an orientation and received little training regarding RMA's and PAD's policies, procedures, guidelines and practices.   As a Risk

4

Management Specialist, Plaintiff's duties included review and analysis of USDA policies, procedures and practices, as well as regulations, legislation and laws affecting USDA's clients and stakeholders.  Plaintiff was not responsible for accessing individual clients' and stakeholders' Personal Identifying Information ("PII") and, during his tenure in PAD, never was afforded access to PII.

22.     RMA's Kansas City location has about five hundred (500) employees, of whom three are Hispanic.

23.     Upon his transfer and until December 2016, Plaintiff's supervisor was Mr. William Bing, PAD Branch Chief.

24.     During his tenure under Mr. Bing's supervision, from April through December 2016, Plaintiff was a fully successful performer and Mr. Bing never issued Plaintiff any discipline or notification that he was not performing fully successfully the duties of the Risk Management Specialist position.

25.     As had been done while Plaintiff worked in Washington, D.C. with FAS, Mr. Bing allowed Plaintiff scheduling flexibility and permitted him to telework.

26.     Upon his relocation to the Kansas City area, Plaintiff, beginning in June 2016, was treated by a mental health provider for his mental impairments.  On December 27, 2016, Plaintiff treated with that provider to discuss the need for reasonable accommodations in his workplace at PAD. In late December 2016, Plaintiff initiated actions at RMA to obtain reasonable accommodation

27.     In late December 2016, Mr. Bing retired.  He was replaced by Ms. Chandra Mason, Caucasian, under forty (40) years of age.  Prior to assuming the PAD Branch Chief position in January 2017, Ms. Mason had never previously held a supervisory position in either the public or private sector.

28. From the time that Ms. Mason assumed her supervisory duties over Plaintiff, she began a "reign of terror" over him.  She showed intolerance and hostility toward Plaintiff's disabilities.  Ms. Mason was dismissive of Plaintiff's expressed concerns about his ability to recall information because of his disability and demonstrated little patience for Plaintiff's explanations about the decompensation in his cognitive abilities and memory when subjected to stress, as well as his becoming disoriented when driving to work.  That belligerence toward Plaintiff because of his disabilities never subsided during Plaintiff's brief and cataclysmic tenure of reporting to Ms. Mason.  Ms. Mason also appeared to harbor animus against Plaintiff because of his other protected classifications – age, race, color and national origin.  She had little patience or tolerance toward Plaintiff, in sharp contrast to the collegial interactions that she had with Plaintiff's co-workers not in his protected classifications.

29. After she became Plaintiff's supervisor, Ms. Mason almost immediately began a course of adverse actions directed against him.  She placed Appellant under a heightened level of scrutiny that was unprecedented and was far beyond normal supervisory scrutiny that was employed by Mason toward Plaintiff's co-workers outside Plaintiff's protected classifications and who had not engaged in protected activities.

30.     In January and February 2017, Plaintiff approached Ms. Mason requesting reasonable accommodation, including permission to telework and schedule and workplace modifications.  He described his physical and mental impairments and the effects that they had on his activities of daily living.  During that time, Plaintiff informed Ms. Mason that he suffered from Autism and that he had a previous reasonable accommodation agreement implemented during his FAS tenure that was honored by Mr. Bing.  Plaintiff informed Ms. Mason that the prior reasonable accommodation agreement included telework and scheduling accommodations.  Ms. Mason was

dismissive of Plaintiff's disclosures regarding his disabilities and the prior reasonable accommodation agreement.

31.     In early January 2017, Plaintiff contacted Mr. Marvin Jones, USDA's Disability Employment Manager, whose office is in Washington D.C., to request a reasonable accommodation request.  On or about January 10, 2017, Mr. Jones began and oversaw efforts by USDA to reasonably accommodate Plaintiff's disability.   From that office, Mr. Jones communicated repeatedly with Ms. Mason and others at the RMA Kansas City facility.

32.     In February 2017, Ms. Mason denied Plaintiff's request for *ad hoc* telework privileges, privileges that routinely were granted to his PAD co-workers not in Plaintiff's protected classifications and who had not engaged in protected activities.

33.     In early 2017, RMA implemented a new time and attendance computer system which experienced significant errors and adjustments during its implementation.  In February 2017, Ms. Mason closely scrutinized Plaintiff's key card entries.  Such heightened scrutiny was not accorded Plaintiff's PAD co-workers not in Plaintiff's protected classifications and who had not engaged in protected activities.

34.     On February 27, 2017, less than two months after becoming the Branch Chief and after Plaintiff had described his physical and mental impairments and requested reasonable accommodation, Ms. Mason issued Plaintiff a Letter of Reprimand.  That Letter of Reprimand, which reflected alleged performance deficiencies and purported time and attendance irregularities. Plaintiff denied those alleged performance deficiencies and purported time and attendance irregularities and explained to Ms. Mason that any time and attendance irregularities were a result of deficiencies and irregularities in a new time and attendance system implemented by RMA in early 2017.  Those irregularities and discrepancies were systemic throughout RMA and PAD.  Any

alleged performance deficiencies were attributable to Ms. Mason's refusal to consider and implement Plaintiff's repeated requests for reasonable accommodation, including telework, as well as schedule and workplace modifications.  Those requested reasonable accommodations would have eliminated the performance and time and attendance issues cited by Ms. Mason in the Letter of Reprimand.

35.     During the period January through February 2017, other PAD employees, not in Plaintiff's protected classifications and that had not engaged in protected activities, experienced similar difficulties with the newly implemented time and attendance system, yet were not issued letters of reprimand or otherwise disciplined by Ms. Mason.

36.     On March 6, 2017, Plaintiff's treating mental health provider, Dr. Fernando Rosso, sent a letter to Mr. Marvin Jones, USDA's Disability Employment Manager, apprising Mr. Jones of Plaintiff's physical and mental impairments and requesting reasonable accommodation.  In that letter, Dr. Rosso described his opinion that Plaintiff was suffering from Autism and that such condition was accompanied by multiple developmental disabilities.  Dr. Rosso described in detail Plaintiff's sensitivities to the PAD physical and social environment and opined that such **consequences** frequently are found in Autism Disorder.

37.     On or about March 24, 2017, Plaintiff submitted another request for reasonable accommodation, including Dr. Rosso's medical recommendations concerning accommodations for Plaintiff's disabilities.  Mr. Jones, in Washington, D.C., directed USDA's efforts in reviewing and considering Plaintiff's requests for reasonable accommodation.

38.     During March 2017, Ms. Mason directed Plaintiff to utilize annual leave, instead of sick or medical leave, to attend a therapy session with a mental health care provider.  She also directed Plaintiff to utilize annual leave to attend work-related meetings in Washington DC  and Topeka,

Kansas.  Ms. Mason also assigned Plaintiff a work task to be completed during an approved annual work day.  Plaintiff's PAD co-workers, not in his protected classifications and that had not engaged in protected activities, were not burdened with similar strictures by Ms. Mason.

39.     During the period February 27 – June 15, 2017, Plaintiff continued to perform his job at a fully successful level.  During that period, Ms. Mason never counseled or admonished Plaintiff regarding his job performance.  Nor did she counsel or admonish Plaintiff that he was violating any RMA policies or procedures.

40.     On April 7, 2017, Ms. Mason, as part of her stratagem to isolate and ostracize Plaintiff, directed Plaintiff not to communicate with his co-workers via e-mail.  Similar restraints were not placed on Plaintiff's PAD co-workers not in his protected classifications and who had not engaged in protected activities.

41.     In February 2017, Plaintiff sought to burnish his experience at USDA by seeking Ms. Mason's approval for a detail assignment to the USDA's ombudsman's office to continue USDA-wide website translation efforts coordinated through that office.  Shortly after Plaintiff submitted his detail assignment request, Ms. Mason approached Plaintiff and appeared perturbed.  Ms. Mason aggressively interrogated Plaintiff about prior disclosures that Plaintiff had made to the ombudsman about apparent discriminatory disparities in crop insurance rates charged to small Hispanic farmers.  Ms. Mason demanded that Plaintiff furnish her with copies of his disclosures to the ombudsman. Subsequently, Plaintiff provided those disclosures to Ms. Mason.  Plaintiff's detail assignment request ultimately was denied by Ms. Mason.

42.     On or about April 11, 2017, Ms. Mason denied Plaintiff the opportunity to serve as a volunteer participant on the RMA Special Emphasis Program/Diversity Council.

9

43.     On April 21, 2017, Defendant failed to finalize Plaintiff's request for reasonable accommodation.

44.     During April 2017, Ms. Mason had approved medical leave for Plaintiff to attend a medical appointment.  That medical appointment ran longer than the anticipated time.  When Plaintiff returned to work, Ms. Mason directed him to charge his absence as Absence Without Leave ("AWOL").  Plaintiff's PAD co-workers, not in his protected classifications and who had not engaged in protected activities, were not subjected to similar strictures by Ms. Mason.  The PAD's and RMA's practice for situations where medical appointments exceeded the approved leave period was not for the employees to charge the additional time as AWOL, but rather, to have the employee, upon his return to work, submit a leave request for the additional time.

45.     During the period March 6 – April 25, 2017, no USDA official, including Mr. Jones and Ms. Mason, had any substantive interactive communications with Plaintiff concerning his physical and mental impairments and the reasonable accommodations being sought by Plaintiff.

46.     On April 25, 2017, Mr. Jones issued a Reasonable Accommodation Decision, denying Plaintiff's request for reasonable accommodation and proposing limited, ineffective accommodations.  Plaintiff expressed his objections to Mr. Jones' proposed accommodation plan since it denied the most effective forms of reasonable accommodation, including telework and schedule and workplace modifications.

47.     Plaintiff was given a period to consider the limited accommodations proposed by Mr. Jones.  Mr. Jones gave Plaintiff a deadline of May 22, 2017 for informing Mr. Jones whether he accepted or rejected the proposed reasonable accommodation plan.

48.     On May 18, 2017, Plaintiff filed his first administrative Complaint of Discrimination, alleging unlawful discrimination and retaliation with the USDA.

49.     During the period May 18 – 30, 2017, Plaintiff was vacationing in Peru.  He left his RMA-issued laptop computer behind in his residence.

50.     While out of the country, Plaintiff on May 22, 2017, Plaintiff asked his sister, Ms. Miluska Del Pozo, to access his e-mail account on his USDA computer so that Plaintiff could meet Mr. Jones' deadline regarding the proposed reasonable accommodation plan.  Plaintiff trained a security camera on his sister while she was following Plaintiff's instructions and accessed Plaintiff's e-mail account.  She located Mr. Jones' e-mail address and, at Plaintiff's direction, sent a message to Mr. Jones requesting additional time to respond to Mr. Jones' e-mail setting the deadline for Plaintiff's acceptance or rejection of the proposed accommodation plan.  Ms. Del Pozo was on the computer for less than five minutes and did not access any other files on the computer.

51. Later that day, Plaintiff asked his sister to again access the computer to see whether Mr. Jones had responded to his previous e-mail.  Again following Plaintiff's directions, his sister accessed Plaintiff's e-mail and found that Plaintiff's original message had come back with an "out of office" message from Mr. Jones' e-mail address, indicating that Mr. Jones may not have received Plaintiff's earlier request for additional time to respond to Mr. Jones' proposed reasonable accommodation plan.  Plaintiff instructed his sister to send Mr. Jones another message reflecting that Plaintiff was rejecting Mr. Jones' proposed reasonable accommodation plan.  Following Plaintiff's instructions and under his surveillance, Ms. Del Pozo sent Mr. Jones that message.  Ms. Del Pozo was on the computer for less than five minutes and she did not access any other files on the computer.

52. When Plaintiff was out of the country, the USDA computer was kept in a locked room **at his** residence and Ms. Del Pozo only entered that room upon Plaintiff's instructions and only

11

logged on twice at Plaintiff's direction to convey messages to Mr. Jones about Plaintiff's response to Mr. Jones' proposed reasonable accommodation plan.

53. Plaintiff returned to work on May 31, 2017.  At that time, his USDA laptop computer immediately was seized by RMA officials and never was returned to him.  After the laptop was seized, it never was returned to him and its contents were "wiped" clean by RMA security and information technology officials and staff.  Plaintiff was informed that a security investigation was being conducted concerning Ms. Del Pozo's accessing his USDA laptop.  That investigation failed to disclose that Ms. Del Pozo accessed any files other than Plaintiff's e-mail account to communicate with Mr. Jones about the proposed reasonable accommodation plan and it did not find that any other USDA files were accessed or compromised during Plaintiff's absence between May 18 and May 30, 2017.

54. On June 14, 2017, Ms. Mason met with Plaintiff to discuss time and attendance matters. She did not issue Plaintiff a counseling or disciplinary memorandum or communication concerning that meeting.  At that time, Plaintiff's PAD co-workers not in his protected classifications and who had not engaged in protected activities who had similar difficulties with RMA's new time and attendance system were not subjected to similar strictures by Ms. Mason.

55. On June 15, 2017, Plaintiff was placed on paid administrative leave and was barred from the RMA facility.  Plaintiff was required to surrender his USDA Government Identification Card, government credit cards, keys and any other government equipment in his possession.

56. On June 20, 2017, Plaintiff amended his administrative Complaint of Discrimination to allege additional instances of unlawful discrimination and retaliation.

57. On July 17, 2017, Ms. Mason issued Plaintiff a Notice of Proposed Removal ("NOPR"). Ms. Mason recommended Plaintiff's removal from federal service, citing principally the incident

involving Ms. Del Pozo's accessing Plaintiff's USDA computer on May 22, 2017and several other specifications concerning events that either never occurred or were never framed by Ms. Mason as rising to the level or formal or informal discipline or counseling.  Several of the specifications contained in the NOPR involved instances that directly could have been addressed or avoided by the reasonable accommodations that were sought by Plaintiff.  Other PAD co-workers, not in Plaintiff's protected classifications or who had not engaged in protected activities, were not similarly subjected to similar notices of proposed removal.   The penalty proposed by Ms. Mason far exceeded the appropriate level of discipline described in USDA and RMA disciplinary policies, procedures, guidelines and standards.  Because Plaintiff's USDA computer had been confiscated and its contents wiped clean by USDA security and information technology officials and staff, Plaintiff was precluded from mounting a complete rebuttal to the specifications contained in the NOPR.

58. Although Plaintiff responded to the NOPR and demonstrated the specifications' factual inaccuracy and lack of foundation, Ms. Mason's removal recommendation was adopted by Timothy Hoffman, the Director of the Product Administration and Standards Division ("Deciding Official"), in his Decision on Proposed Removal ("DPR"), dated August 25, 2017.  Plaintiff was removed from federal service on August 25, 2017.

59. Following his removal, Plaintiff, on September 26, 2017 sought to amend his administrative Complaint of Discrimination, RMA-2017-00417, to add allegations concerning the NOPR and his removal from federal service.  On October 23, 2017, Defendant denied the requested amendment, noting that the investigation incident to that Complaint of Discrimination had been completed.  In October 2017, Plaintiff initiated contact with an EEO counselor to file a new administrative complaint of discrimination for the events surrounding the NOPR and his removal

13

from federal service. After such contact, a new complaint number was assigned, RMA-2018-00117. On February 20, 2018, Plaintiff filed a formal complaint alleging that he was removed from federal service based on unlawful discrimination and in retaliation for engaging in protected activities.

60. Plaintiff's removal was effected contrary to Defendant's policies, procedures, guidelines, regulations.

61. As a result of the above-stated actions, Plaintiff has suffered economic damages, including, but not limited to, lost wages and benefits, proper classification of her job, denial of promotion or advancement opportunities, loss of status and prestige, severe emotional distress, humiliation and embarrassment, medical expenses, attorney's fees and costs associated with this lawsuit.

## COUNT I

## VIOLATION OF § 504 OF THE VOCATIONAL REHABILITATION ACT OF 1973 – FAILURE TO MAKE REASONABLE ACCOMMODATIONS

1. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 61 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

2. At all times relevant to this Complaint, Plaintiff was a "qualified individual with a disability."

Plaintiff was fully able to perform the essential functions of his job.

3. Defendant was required, but failed, to implement reasonable and effective accommodations for his disabilities.

4. Plaintiff repeatedly requested reasonable accommodations including telework, as well as schedule and workplace accommodations that would enable him to perform the essential functions of his job.

5.      Plaintiff's requests for reasonable accommodation were ignored or rejected without any discussions with Plaintiff.  Defendant failed to engage in interactive good faith negotiations with Plaintiff about reasonable accommodations being sought by Plaintiff.

6.      Defendant denied Plaintiff's requests for reasonable accommodation, even though Plaintiff, at all times relevant to this Complaint, successfully could perform his job responsibilities.

7.      Non-disabled employees in the PAD have been granted accommodations in their work schedules and telework practices that Plaintiff was denied.

8.      Plaintiff was denied reasonable accommodations and was treated disparately in the application of performance management and disciplinary standards and was removal from federal service because of his disabilities. Defendant is required to take affirmative actions to make reasonable accommodations for qualified individuals with disabilities, such as Plaintiff.

9.      Similarly situated non-disabled PAD employees have been treated more favorably than Plaintiff.

10. Plaintiff's requests for accommodations did not impose an undue hardship upon Defendant.

11. The discriminatory actions described above taken by Defendant were taken solely by reason of Plaintiff's disability and Defendant's explanations for its actions are pretextual.

12. Defendant's actions, in failing to make reasonable accommodations for Plaintiff's disabilities, violated § 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

13. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney' fees and costs related to this litigation.

## COUNT II

## UNLAWFUL RETALIATION IN VIOLATION OF THE VOCATIONAL REHABILITATION ACT OF 1973

14.　　Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 74 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

15.　　Plaintiff began engaging in protected activities under the VRA in December 2016, when he began requesting reasonable accommodation by RMA.  Those activities continued for the remaining term of his RMA employment, until August 25, 2017.  In May 2017, Plaintiff filed an EEO Complaint alleging that he had been discriminated and retaliated against, *inter alia*, because of his disabilities.  That EEO Complaint was amended in June 2017.  A new EEO Complaint alleging that he had been discriminated and retaliated against, *inter alia*, because of his disabilities was filed in October 2017.

16.　　Plaintiff has suffered unlawful retaliation by Defendant for engaging in activities protected by the VRA, including, but not limited to, denying his requests for reasonable accommodation, issuing Plaintiff a Letter of Reprimand, issuing him a Notice of Proposed Removal and removing him from federal service on August 25, 2017.

17. Defendant took materially adverse actions against Plaintiff for his engaging in protected activities.  Such actions would dissuade a reasonable worker from engaging in activities protected by the VRA, including opposing unlawful employment practices and participating in protected EEO activities.

18. There is a strong causal connection between Plaintiff's protected EEO activities and his repeated requests for reasonable accommodation and the adverse actions taken against him.

19. But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions

16

described above.

20. Defendant's explanations for its actions are pretextual.

21. Defendant retaliated against Plaintiff in violation of the Vocational Rehabilitation Act of 1973.

22. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT III

## UNLAWFUL DISCRIMINATION IN VIOLATION OF § 504 OF THE VOCATIONAL REHABILITATION ACT OF 1973

62. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 83 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

63. At all times relevant to this Complaint, Plaintiff was a qualified person with a disability, able to perform the essential functions of his job with or without reasonable accommodation.

64.     Between January and August 25, 2017, Defendant took a series of discriminatory adverse actions toward Plaintiff because of his disability, including, but not limited to, denying his requests for reasonable accommodation, imposing unreasonable and unachievable performance standards, counseling him for non-existent performance problems, issuing him a Letter of Reprimand and a Notice of Proposed Removal and removing Plaintiff from federal service for reasons not supported by USDA and RMA policies, procedures, regulations, guidelines and standards.

65.     Plaintiff suffered the unlawful adverse actions described above.

66.     Plaintiff's disability was the determining factor in the adverse actions described above.

67.     The explanations offered by Defendant for its actions are pretextual.

68.     Defendant's actions were unlawful and in violation of § 504 of the Vocational Rehabilitation

Act of 1973, 29 U.S.C. § 794(a).

69.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IV

## UNLAWFUL DISCRIMINATION IN VIOLATION OF § 703 OF THE CIVIL RIGHTS ACT OF 1964

70.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 91 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

71.     Plaintiff is of Peruvian national origin, with a brown complexion.

72.     Between January and August 25, 2017, Defendant took a series of discriminatory adverse actions toward Plaintiff because of his race, color and national origin, including, but not limited to, denying his requests for reasonable accommodation, imposing unreasonable and unachievable performance standards, counseling him for non-existent performance problems, issuing him a Letter of Reprimand and a Notice of Proposed Removal and removing Plaintiff from federal service for reasons not supported by USDA and RMA policies, procedures, regulations, guidelines and standards.

73. Plaintiff suffered the unlawful adverse actions described above.

74. Plaintiff's race, color and national origin were determining factors in the adverse actions described above.

75. The explanations offered by Defendant for its actions are pretextual.

18

76. Defendant's actions were unlawful and in violation of § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

77. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT V

### UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF THE CIVIL RIGHTS ACT OF 1964

78. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 99 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

79. Plaintiff began engaging in protected activities under Title VII in March 2017 when he initiated formal counseling and later, in May 2017, filed his initial administrative complaint of discrimination, alleging that he had been discriminated and retaliated against, *inter alia*, because of race, color and national origin.  Those activities continued for the remaining term of his RMA employment, until August 25, 2017.  That EEO Complaint was amended in June 2017.  A new EEO Complaint alleging that he had been discriminated and retaliated against, *inter alia*, because of his race, color and national origin was filed in October 2017.

80. Plaintiff has suffered unlawful retaliation by Defendant for engaging in activities protected By Title VII, including, but not limited to, denying his requests for reasonable accommodation, issuing Plaintiff a Letter of Reprimand, issuing him a Notice of Proposed Removal and removing him from federal service on August 25, 2017.

81. Defendant took materially adverse actions against Plaintiff for his engaging in protected

activities.  Such actions would dissuade a reasonable worker from engaging in activities protected by Title VII, including opposing unlawful employment practices and participating in protected EEO activities.

82. There is a strong causal connection between Plaintiff's protected EEO activities and the adverse actions taken against him.

83. But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

84. Defendant's explanations for its actions are pretextual.

85. Defendant retaliated against Plaintiff in violation of Title VII.

86. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## <u>COUNT VI</u>

## <u>UNLAWFUL DISCRIMINATION IN VIOLATION OF § 4 OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967</u>

87.     Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 108 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

88.     Plaintiff is over 40 years of age and is a person protected by the Age Discrimination in Employment Act of 1967 ("ADEA").  Ms. Mason is under forty (40) years of age and is substantially younger than Plaintiff.

89.     Between January and August 25, 2017, Defendant took a series of discriminatory adverse actions toward Plaintiff because of his age, including, but not limited to, denying his requests for reasonable accommodation, imposing unreasonable and unachievable performance standards,

20

counseling him for non-existent performance problems, issuing him a Letter of Reprimand and a

Notice of Proposed Removal and removing Plaintiff from federal service for reasons not supported

by USDA and RMA policies, procedures, regulations, guidelines and standards.

90.     Plaintiff suffered the unlawful adverse actions described above.

91.     Plaintiff's age was the determining factor in the adverse actions described above.

92.     The explanations offered by Defendant for its actions are pretextual.

93.     Defendant's actions were unlawful and in violation of § 4 of the ADEA, 29 U.S.C. § 623.

94.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic

damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional

distress, medical expenses, attorney's fees and costs related to this litigation.


### COUNT VII

### UNLAWFUL RETALIATION IN VIOLATION OF § 4(d) OF THE AGE DISCRIMINATION ACT OF 1967

95. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation

contained in ¶¶ 1 through 116 of this Complaint as though they are fully set forth herein, and makes

them part hereof and, furthermore, states as follows:

96. Plaintiff began engaging in protected activities under § 4(d) of the ADEA in March 2017

when he initiated formal counseling and later, in May 2017, filed his initial administrative

complaint of discrimination, alleging that he had been discriminated and retaliated against, *inter

alia*, because of his age.   Those activities continued for the remaining term of his RMA

employment, until August 25, 2017.   That EEO Complaint was amended in June 2017.   A new

EEO Complaint alleging that he had been discriminated and retaliated against, *inter alia*, because

of his age was filed in October 2017.

97. Plaintiff has suffered retaliation for engaging in activities protected by the ADEA,

including, but not limited to, denying his requests for reasonable accommodation, issuing Plaintiff a Letter of Reprimand, issuing him a Notice of Proposed Removal and removing him from federal service on August 25, 2017.

98. Defendant took materially adverse actions against Plaintiff for his engaging in protected activities. Such actions would dissuade a reasonable worker from engaging in activities protected by the ADEA, including opposing unlawful employment practices and participating in protected EEO activities.

99. There is a strong causal connection between Plaintiff's protected EEO activities and the adverse actions taken against him.

100.    But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

101.    Defendant's explanations for its actions are pretextual.

102.    Defendant retaliated against Plaintiff in violation of the ADEA.

103.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court grant him the following relief, namely:

(i)   That this Court determines that the employment practices complained of in this Complaint are unlawful in that they violate the Rehabilitation Act and Title VII.

(ii)  That Defendant pays Plaintiff a sum in excess of $300,000 for compensatory damages.

(iii) That Defendant pays Plaintiff's costs and expenses and reasonable attorney's fees as provided under federal laws in connection with this action.

(iv)  That this Court grants other and such further relief to the Plaintiff as it deems just and proper.

DATED:  November 19, 2018.


Nathaniel D. Johnson (MD Bar #14729)
Attorney for Plaintiff
The Johnson Law Firm
3261 Old Washington Road, Suite 2020
Waldorf, MD 20602
301 645-9103/888 492-9434 (fax)
ndjesquire@gmail.com